We have three argued cases today, and in between the first two and the third one, we'll take a brief recess. But before we begin our session today, I believe Judge Rayna has a motion to make. Thank you, Judge. I move for the admission of Daniel H. Brien, who is a member in good standing of the Highest Court of Pennsylvania, and Derek McCorkindale, who is a member of the Bar in good standing in the Highest Courts of Virginia and the District of Columbia, and Abigail Perdue, who is a member of the Bar in good standing of the Highest Court of New York and the Court of Federal Claims. I have knowledge of their credentials, and I'm satisfied that they possess the necessary qualifications. Thank you, Judge. May I? I'm going to make a couple brief comments. Dan, Derek, and Abby, time really flies when you're working hard and you're enjoying your task at hand. It's hard to believe that I have been on the bench for a little over a year. It's been a time of excitement, hard work, and learning, and the three of you have been there with me every step of the way. Now, the three of you are exceptional lawyers, and as all great lawyers, you're teachers of the law. To paraphrase that intrepid space fighter of Star Wars, O.B. Wan, law clerks, you have taught me well. Dan Brien, your work ethic is among the best I have ever seen. How many times have I left chambers late at night and you remain at your desk? Many, many times. That's how many. You and I have had many discussions on the law, which I can only describe as delicious. Derek McCorkendale, you have a serious, cautious approach to the law that is a hallmark of greatness. I cannot help but smile when I picture you at the whiteboard, marker in hand, drawing diagrams. You never stop looking for that other facet that will provide a fresh view of the law. That is not a skill, that is character. Abigail Perdue, when I first interviewed you, I asked you to describe yourself, and after some thought you looked at me in the eye and you said, I am a nice person. And that you are, in tons. But you are also extremely smart, a great writer, and an editor whose pen knows no end. You are an efficient and an economic lawyer. When you leave chambers, you will re-enter your career as a law professor, and our students and profession will be greatly enriched by it. I am immensely proud to move for your admission to this honorable court. I know that you will bring scholarship, professionalism, and success in your careers. And for my part, I promise to work hard to hold up my end of the bargain. Thank you for working as my very first law course. I could not have asked or found anyone better. Thank you. Judge Raina, your motion is granted. And we welcome all three of you to the bar of the court. And thank you for all your excellent work on behalf of Judge Raina and on behalf of the court. You may take the oath now. Judge Raina, in your right hand, you swear or affirm that you will comport yourself as an attorney and counsel to this court, uprightly and according to law, and that you will support the Constitution of the United States of America. Congratulations, and welcome to the bar of the United States Court of Appeals. And we'll hear argument first in number 2011-7143, Catteret versus Shinseki. Mr. Carpenter. Thank you very much, Your Honor. May it please the court, Kenneth Carpenter appearing on behalf of Mr. Catteret. Mr. Catteret appeals the decision of the Veterans Court, asserting that the Veterans Court did not rely upon sufficient legal evidence in its decision to allow for the rebuttal of the presumption of soundness under 38 U.S.C. 1111. This court in Kent noted that the statute specifies that the presumption of soundness can only be rebutted by clear and unmistakable evidence. The VA at 38 CFR 3.304 B.1 defines the medical evidence needed to rebut the presumption of soundness, and that evidence must include an analysis of the accepted medical principles or a thorough analysis of the evidentiary showing and a careful correlation of all material facts. In this case, the Veterans Court relied upon what it referred to as a rational basis for the medical opinion in this court. A rational basis in a medical opinion does not equate to an analysis of the accepted medical principles or a thorough analysis of the evidentiary showing or careful correlation. Counsel, isn't your argument basically you're asking us to reweigh the evidence in this case? No, Your Honor. The question of legal sufficiency is a question of law. This court, as well as the court below, has held that whether or not the VA meets its evidentiary burden to rebut the presumption of soundness is a question of law, and therefore we are dealing with the undisputed fact of the evidence in this case is a single medical report. It's in the joint appendix of pages 56 to 58, and that opinion is the opinion which was relied upon by both the VA, the board, and the court below to rebut the presumption of soundness. It's a question of law as to whether or not that opinion meets the legal standard that is required by the provisions of 3.304B1 and the statutory requirements of 1111. So are you arguing that the evidence in the record indicates that your client was sound upon entering into the service, and that creates a presumption? That's correct, Your Honor. Nothing was noted at his entrance, even though apparently it was known to his recruiter that he had been seen for and hospitalized for the treatment of schizophrenia, and as a result of it having not been noted, in other words, no disability was noted at the time in which he went through his physical examination, he is entitled to the benefit of the presumption of soundness. Didn't the medical doctor, when they evaluated him, know the basis of his prior hospitalization? Which doctor, the entrance exam or the one that's at issue in this case? At issue in this case. Yes, yes, she did. So her evaluation was based also on knowledge of Mr. Corday's condition prior to entering into service. Yes, and Mr. Caderet does not dispute that there is clear and unmistakable evidence based upon his hospitalization for schizophrenia that he had schizophrenia prior to entering service. But as this court noted in Wagner, there are two prongs to the presumption of soundness, and the second prong requires that the VA must presume that a condition was aggravated during service unless the VA can come forward with clear and unmistakable evidence that the condition that was noted, or the aggravation which took place was the natural progression. In this case, Dr. Harris found that there was in fact a permanent increase. She found that after a single hospitalization prior to service, that the breakdown which took place in service constituted a permanent increase in the severity of his schizophrenia. But she then went on to say that she had a belief that this was the natural progression. It is our position that a statement of belief is not consistent with the VA's own regulation of what is required to rebut the presumption of aggravation and the second prong of the presumption of soundness, specifically that it be based upon... Isn't that argument based on kind of like the common sense word of belief? But when a doctor says, I believe, aren't they stating a medical opinion? Aren't they stating an opinion based on their evaluation and their review of the record and the other matters that the record indicates that they looked at? Absolutely, Your Honor. But the statute and the VA's own regulation requires more. They require clear and unmistakable evidence. That statement of belief, that medical opinion must be an undebatable opinion that is based upon accepted medical principles. There is nothing in the VA examination that is relied upon in this case that indicates that her belief was based upon any accepted medical principle and whatever that medical principle might have been for her belief, she never articulated it. So you're saying that every time we're dealing with one of these presumptions that the sufficiency of the evidence to overcome it is a legal question and we can look into the evidence to see whether it's sufficient? Yes, Your Honor. And that specifically this... Why isn't that inconsistent with our lack of jurisdiction to consider facts, to decide factual issues? Why is that a legal issue? Because it is a question of a legal sufficiency. There is a legal standard that is imposed by statute. That statute is 1111. The VA by regulation has defined what that evidence must include and it must include an analysis of accepted medical principles. And there is nothing in this examination that discusses any accepted medical principles. It takes those medical principles that are unstated as a given. That is not what is contemplated by 3.304B1. What is contemplated by 3.304B1 is an analysis of what those accepted principles are. In other words, Your Honor, what the doctor said was there was a permanent increase. She said that what happened during service resulted in a permanent increase in this man's pre-existing condition. But she gave no further explanation as to why she had a belief that it was the natural progression. And what she did talk about was stressors. Stressors has nothing to do with this. Either pre-service stressors or the fact that he noted no stressors during service. The relevant question is whether there was or wasn't a permanent increase. And she says there was. And then it was her obligation, or excuse me, the VA's obligation, to solicit from her an analysis of why she had that belief based upon either accepted medical principles or a careful and thorough analysis of the evidentiary showing and a careful correlation of all material facts. Governor, what about the other medical opinion in this case, Dr. Avery's opinion, the 2005 examination? That was fairly quite fulsome in detail. It was, Your Honor. You've been focusing on the Harris, Dr. Harris. But what about the, I guess he gave two reports. One is at JA-79 and then a little supplemental statement is at JA-83. I mean, that seems to be a very lengthy, detailed first one and then a little clarification in the second one. But it does not address, Your Honor, the pertinent question of the second component of the presumption of soundness, which is was there or wasn't there a permanent increase, or excuse me, was there or wasn't there an increase in severity during the period of active duty that was above and beyond what was preexisting and whether or not there was clear and unmistakable evidence that that was the natural progression. But what about what he says at JA-84? He says it is the opinion of this evaluator that, again, the veteran's primary disabling condition is schizophrenia. And he goes on and he says that it's inherited disorder. In such a brief time, it's hard to imagine that the military had a significant impact. And this is, you know, in the context of this problem was manifested in a very short time after he entered the service. And this Dr. Avery, I guess, gave a very thorough exam. And that statement of it's hard to imagine that the military had a significant impact is at odds with Dr. Harris's opinion that there was, in fact, a permanent increase that took place. And it is the permanent increase that was what was required to be presumed. Essentially, Dr. Avery takes issue with whether there was any increase or not. But that's the part of the presumption of soundness that exists in the second prong of the presumption of aggravation. But she said there was an increase, but that it was the natural progression and not specifically due to specific military stressor. That's correct, Your Honor. And the question is whether or not that second portion about natural progression does or does not meet the imposed legal standard by both Congress in the statute and by the VA in their own regulation. And that is a question of law as to whether or not that statement of belief is sufficient to meet the thorough analysis that is required by the VA's own regulation of 3.304B1. What case says that it's a question of law? Well, there are a number of cases at the Veterans Court. No, in our court. There is no case at this court except by inference in the Kent case in which the Kent court said that Mrs. Kent had not brought to, or it was Mr. Kent, excuse me, had not brought to this court the question of the legal sufficiency of the evidence. So clearly this court has to grapple with whether or not that is or is not a question of law, and we believe that based upon the holdings at the Veterans Court that this court should adopt that view and that it is a simple question of law, whether or not the evidence that is presented in the record does or does not meet the legal requirements of both the statute and the regulation. Has this issue been raised by you in other cases? I'm pretty sure that it has, John, although I can't recall any case that has gone to any resolution in terms of a... There's been a rule 36. There was some discussion in Walter of Kent. Sorry. Yes, there was, Your Honor. No, Your Honor, I can't recall, but there may have been. I don't recall a case that was dealt with the question as it's presented in this case where you have a clear opinion that can be measured against the stand. Okay. We'll reserve the rebuttal time. Ms. Gerber? Good morning. May it please the Court. Mr. Catteret was in service for just 11 days when he was hospitalized and diagnosed with schizophrenia. Not one but two medical opinions, as has been discussed previously, discuss the fact that Mr. Catteret's schizophrenia did not get worse because of those 11 days of service. Counsel states that there's an inconsistency in the opinion, but that's actually not necessarily true. It's a question of whether the 11 days of basic training made Mr. Catteret's schizophrenia worse. Don't the admission records or the entry records into service, they're silent as to any type of mental disability. The entrance records, the medical examiner did make a note of Mr. Catteret's previous hospitalization. Yes, but it doesn't say why, and it indicates that as a result of the hospitalization, he was fit to enter into the service. So doesn't that raise a presumption of soundness? Yes, certainly, Your Honor, and we do not dispute that the presumption of soundness applies. The question is not whether the first prong of the presumption of soundness is rebutted because both of the parties agree that that clear and unmistakable evidence standard has been met with regards to whether Mr. Catteret had schizophrenia prior to entering service. The court below said yes. The question is merely whether the 11 days of basic training aggravated Mr. Catteret's schizophrenia. Now, Dr. Harris's opinion states that it was her opinion that the natural progression of Mr. Catteret's schizophrenia was the reason why his schizophrenia got worse, not the 11 days of basic training. And Dr. Avery, I think, and the Veterans Court calls him Dr. Lawrence, but I think that is his first name. I was just looking at that. Dr. Avery's opinion says that the 11 days of service didn't cause his schizophrenia to get worse either. Indeed, it would be hard to believe how those 11 days of service would have made Mr. Catteret's schizophrenia worse. Well, I think she said that boot camp for anybody would be stressful. Yes, Dr. Harris certainly says basic training is stressful, and everyone agrees that it is. But if you have somebody with a preexisting severe mental disability, wouldn't a week or two weeks of boot camp, couldn't that be sufficient to trigger a more rapid or increased progression of the disability? It might be, Your Honor, but that's a question of facts and figuring out what exactly the weight of Dr. Harris's opinion is and whether the court below should have given it the weight it did. But that's a question of facts to law. What's the difference? I mean, is legal sufficiency a legal issue that we can review? Can we go into the facts to see whether they're legally sufficient? Well, to the extent that it's legal sufficiency, certainly, yes. What does it mean, legal? Well, legal sufficiency, the Walter case, which was briefly mentioned earlier this morning, has a good explanation, and this is at 447 F. 3rd, 1380, saying a challenge to legal sufficiency of the evidence tests whether the evidence in question as a matter of law is capable of meeting the applicable legal standard. Strictly speaking, evidence is said to be insufficient in law only in those cases where there is a total absence of such proof, either as to its quantity or kind, as in the particular case, some rule of law requires as essential to the establishment of the fact. That would be, for example, if there were no medical opinions in this case or if medical opinions were not an acceptable type of evidence to overcome the presumption of soundness. In Kent, the question was whether after there's a clean bill of health, whether any post facto medical opinion could be sufficient to overcome the presumption of soundness. As long as there's a medical opinion in the record, your position is that our inquiry ends? Whether there is a medical opinion that reviews the facts, that reviews the record, and both of the medical opinions on the record did so, that look at the actual question, whether there was an aggravation of schizophrenia. Yes, at that point, anything further requires this court to weigh the evidence and determine in context what the word believe means, whether that's sufficient, whether her statement of stressors, whether Dr. Avery's discussion of the genetics of schizophrenia, whether those are all sufficient. That requires looking into the facts, and it's not part of this court's jurisdiction. Are you saying that here we have sort of application of law to fact, which is beyond our jurisdiction? Yes, Your Honor. And the law that's being applied would be, in your view, the regulation that Mr. Carpenter cited. I guess it was 3.304B1 in the statute. Yes, 3. 1101, I guess. 1111, Your Honor. 1111, I'm sorry. Yes, and also the Veterans Court also cited 1153, and the corollary is CFR 3.306A, which talks about the natural progression of the disease, being able to overcome the presumption of aggravation by military service. And Dr. Harris made a clear finding, or not a finding, or a clear statement that it was her opinion or her belief that this was a natural progression of the disease. She did this after examining Mr. Catteret, after looking at his records, after trying to see if there was anything in particular to Mr. Catteret's basic service or basic training that could have aggravated his schizophrenia. And she came to a medical conclusion that the court below relied upon, and that is legally sufficient, and anything more would be a question of fact, or a fact that applied to law. One question you said the court relied on. I mean, and correct me if I'm wrong, please, but I understood that the board and the court, you and the board relied on both opinions. That's the correct... Both the Harris and the Avery opinions. Yes, both were discussed. There was, in the Veterans Court, more stress placed on and more discussion of Dr. Harris's opinion, but certainly both were discussed. And I believe the Veterans Court, I think it was the Veterans Court, said that Dr. Avery's opinion helped bolster Dr. Harris's opinion. Again, that's weighing the evidence and determining how reliable and how much weight it should be given, and that's something for the Veterans Court to do, certainly, but is outside this court's jurisdiction. In the red brief, you're asking us to affirm the Veterans Court decision, but it seems to me that you're arguing that we have no jurisdiction. Yes, Your Honor. And I apologize if the wrong terminology was used in the brief. We do request that the court dismiss for lack of jurisdiction. If there are no further questions, thank you. Thank you. I'd like to begin with a discussion of Walser. Walser was a severance case in which Mrs. Walser's original grant of service connection was severed, and then she brought a claim of clear and unmistakable error attacking that severance. And the discussion and the quotation that was provided by counsel dealt with the legal sufficiency of whether or not there was or was not clear and unmistakable evidence to sever. In this context, we're talking about a statutory presumption, a presumption that precludes or allows the appellant to be substituted from the burden of submitting evidence as to his fitness at entrance. And it is to be presumed. And under that presumption, as this court analyzed in Wagner, that presumption has two prongs. It is the second prong that is at issue here. If the VA's position is adopted that all that is needed is a medical opinion in the record, that renders both the statutory criteria, its own regulatory criteria, meaningless. A presumption has no meaning. But doesn't your argument lead to the situation where in every presumption case, we're supposed to look at the evidence and weigh its sufficiency to determine whether there's enough of it to rebut the presumption? Yes, it does, Your Honor, but quite candidly, I don't believe that that is an onerous burden on either the court below, which has adopted that view, that they will review de novo as a question of law the legal sufficiency to rebut, any more than it is a burden on this court to do. And it is important to sustain both the intent of Congress and the benefit that Congress has given to veterans that if they enter service and no condition is noted, then they are entitled to the presumption of soundness until that presumption is taken away as a matter of law. And it cannot be taken away as a matter of law unless there is clear and unmistakable evidence to rebut both prongs of the presumption. Let me ask you, if we assume that there has to be clear and unmistakable evidence, that's the test, right? And the board found and the court affirmed the finding that here, there was clear and unmistakable evidence. So we have the standard or the rule and are we just back in application of law to fact? The law is there has to be clear and unmistakable evidence. The board found and the court affirmed that there was such a level of evidence and you're saying no, there wasn't. Isn't that application of law to fact? No, Your Honor, it's not because it's in the context of a presumption and a presumption and that standard of evidence and the sufficiency of that evidence has been regarded by the court below and treated in this case as a de novo review with no deference to the board's determination and a new determination made by the court below. But we're different though. Our jurisdictional constraints are different than those of the Veterans Court. When the law is being applied in the first instance and the law that is to be applied in the first instance here is the presumption goes to the veteran unless rebutted and it is found to have been rebutted by the court below as a matter of law and that question of law should be subject to the same non-deferential de novo review by this court because that is the only way to sustain the intent of Congress that Congress wanted veterans to have that presumption. So can you say de novo review? Are you arguing that we can go in and reweigh the facts? Well, reweigh the facts only to the extent of the determination as to whether they rise to the level required by the statute. So how do you answer your opponent's argument who says that if there's two medical opinions, there's evaluations, there's a case file and medical doctors who tied everything together, that's all we need to look at in order to rebut the presumption. And you have to look at that through the lens of 3.304b1 and if through the lens of 3.304b1 they meet the legally sufficient requirement of clear and unmistakable evidence. Your Honor, turn this around for a moment. Imagine that Mr. Caderet was bringing a claim of clear and unmistakable error and he had the burden to show by clear and unmistakable evidence that a mistake had been made. An opinion such as the two opinions in this case would not rise to the level to find a clear and unmistakable error in a prior VA decision. This evidence... It wouldn't be an issue for us to decide, though, would it? That would not be. But this is because it arises in the context of a statutory presumption that involves an evidentiary burden that this court has found has been shifted from the veteran to the VA. And whether or not the VA does or does not meet that evidentiary burden has to be a question of law. Thank you very much. Thank you, Mr. Carpenter.